

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| JON LINDLER, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 8:13-2007-MGL-JDA |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| Defendant. | § | |

## ORDER AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS

This is a Social Security appeal in which Plaintiff seeks judicial review of the final decision of Defendant denying Plaintiff's claim for Disability Insurance Benefits (DIB) and supplemental security income (SSI). The parties are represented by excellent counsel. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting to the Court that Defendant's final decision denying benefits be affirmed. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on February 9, 2015, Plaintiff filed his objections on March 4, 2015, and Defendant filed her response to Plaintiff's objections on March 11, 2015. The Court has carefully considered the objections, but finds them to be without merit. Therefore, it will enter judgment accordingly.

Plaintiff alleges that his disability commenced on June 23, 2009, based on depression, anxiety, personality disorder, and residuals of a gunshot wound to his left leg. The Social Security Administration denied his claim, both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) after which he issued a decision on December 12, 2012, finding that Plaintiff was not disabled under the Act. The Appeals Council declined review. Plaintiff thereafter filed this action for judicial review.

The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to her past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made. The Court need not conduct a de novo review, however, "when a party makes general and conclusory

2

objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b).

Thus, the Court will address each specific objection to the Report in turn. As provided above, however, the Court need not–and will not–address those objections that fail to point the Court to alleged specific errors that the Magistrate Judge made in the Report.

First, Plaintiff disagrees with the Magistrate Judge's finding that Plaintiff was "seek[ing] to have the Court reweigh the evidence already considered by the ALJ[.]" Objections 1 (quoting Report 32) (internal quotation marks omitted). But, that is exactly what it appears that Plaintiff is asking the Court to do. The Court has reviewed the opinions of both the Magistrate Judge and the ALJ and agrees with their assessment that there is substantial evidence in the record to support Defendant's decision to deny Plaintiff's claims for DIB and SSI. Therefore, the Court will overrule this objection. The Court will address this issue in greater detail below.

Second, Plaintiff complains that the Magistrate Judge was only half correct when she stated in the Report that "the ALJ explained that Dr. [Caleb] Loring was only provided medical records through January 2011; however, Plaintiff's medical records between January 2011 and April 2012, the time Plaintiff was hospitalized, showed Plaintiff was much better on increased doses of Abilify and was not as depressed." *Id.* at 2 (quoting Report 32) (internal quotation marks omitted). Inasmuch as Plaintiff admits that "[t]he ALF did not discredit Dr. Loring's opinions because he did not have records after January 2011[,] *id.* the Court assumes that Plaintiff takes issue with the Magistrate Judge's statement that "Plaintiff's medical records between January 2011 and April 2012, the time Plaintiff was hospitalized, showed Plaintiff was much better on increased doses of Abilify

3

and was not as depressed." *Id* at 2.  The Court is unpersuaded that the Magistrate Judge erred.

In the Court's own review of the record in this case, Plaintiff's medical records do, in fact, show that his mental condition improved when given Abilify. For instance, on August 22, 2011, Plaintiff reported to Dr. Alvin J. Ratzlaff's office at which time they decided to adjust Plaintiff's medications to include Abilify.  Administrative Record 363.  Dr. Ratzlaff accessed Plaintiff's Global Assessment of Functioning (GAF) score to be 55.  *Id*.  A GAF score of 51-60 is consistent with moderate symptoms and a GAF score of 61-70 is consistent with mild symptoms.  When Plaintiff reported back to Dr. Ratzlaff's office on August 29, 2011, he reported that he was feeling better, although he was still depressed.  *Id.* at 365.  On that visit, Dr. Ratzlaff accessed Plaintiff's GAF score to be 60.  *Id*. Thereafter, on November 28, 2011, according to Dr. Ratzlaff's treatment notes, Plaintiff was "[d]oing much better.  Appears to benefit from increased doses of Abilify.  Not nearly as depressed."  *Id*. at 438.  Therefore, inasmuch as the record bears out the fact that Plaintiff's mental condition improved when given Abilify, the Court will overrule this objection.

Third, Plaintiff argues that the Magistrate Judge "ignores that [Plaintiff] constantly had periods of improvement and worsening." Objections 3.  Although not specifically addressed, the Magistrate Judge's recitation of the relevant portions of the ALJ's decision bears out the fact that the Magistrate Judge based her recommendation to this Court on the medical records as set forth in the ALJ's decision.

The ALJ and the Magistrate Judge have spelled out Plaintiff's medical records in great detail. From the Court's review of the record, except for Plaintiff's April 2012 involuntary hospitalization, his symptoms during the relevant time period generally were mild to moderate before and after his

hospitalization. Moreover, the Court notes that after Plaintiff was released from the hospital, he saw Dr. Ratzlaff on June 25, 2012, at which time Dr. Ratzlaff stated that Plaintiff "says he is feeling better and he appears almost cheerful. This is the best I have ever seen him." Administrative Record 428. Dr. Ratzlaff accessed Plaintiff with a GAF score of 65. *Id* at 429. Thus, this objection is of no import and, to the extent it is meant to undercut the Court's confidence in the ALJ's consideration of the evidence, it fails to do so. As such, the Court will overrule this objection.

Fourth, Plaintiff maintains that the "Magistrate Judge does not address the overall pattern of [Plaintiff's] disabling impairments." Objections 3. Suffice it to say that the ALJ found that Plaintiff did "not have an impairment or combination of impairments" that would render him disabled under the Act. Administrative Record 16. And, then on pages seventeen and following, the ALJ sets forth substantial evidence to support his decision. The Court need not enumerate all of the evidence again here. Hence, the Court will overrule this objection.

Fifth, although not altogether clear, it appears that the crux of this objection is that (1) the Magistrate Judge erred in rejecting Plaintiff's argument "that the ALJ improperly relied on other physicians' conclusions that were irrelevant because they were based on medical records prior to Plaintiff's critical worsening[;] Objections 3, and (2) the Magistrate Judge erred in not finding that the ALJ improperly "relied on medical reviewers who based their opinions on a materially incomplete medical record. *Id*. at 4. According to Plaintiff, "[t]he non-examining reviewers did not have the benefit of reviewing the objective test results administered by Dr. Loring." *Id* at 4.

First, the Court is of the opinion that all of the records that the ALJ considered–both before his hospitalization and afterwards–were relevant inasmuch as they demonstrated to the ALJ the extent of Plaintiff's symptoms. Second, Dr. Loring's opinion was unavailable when the non-

examining reviewers were formulating their opinions. And third, inasmuch as the ALJ rejected the opinion of Dr. Loring, it is difficult to fathom how the reviewing doctors' failure to consider his opinion in formulating their own opinions can be deemed an error. Simply put, substantial evidence supports the ALJ's decision to deny Plaintiff's claim for benefits. Therefore, the Court will overrule this objection.

Sixth, although not altogether clear, it appears that Plaintiff objects that the Magistrate Judge erred in allowing the ALJ's negative credibility determination as to Plaintiff effect his decision to discount Dr. Loring's opinion. *Id.* at 4. But, Plaintiff fails to point to anything in the Report to show that such an allowance was made. Thus, this objection will be overruled.

Eighth, Plaintiff declares that the Magistrate Judge erred in not remanding this case inasmuch as she allegedly found harmless error in the ALJ's consideration of the value of Dr. Loring's opinion on the basis that Plaintiff saw Dr. Loring just once. *Id* at 5.

In the ALJ's decision regarding what weight to give to Dr. Loring's opinion, he wrote:

> I have given full consideration to the opinion of Dr. Loring that the claimant is considerably more impaired by his mental impairments. I do not find his opinion, based upon his one-time evaluation of the claimant, to be adequately supported by the minimal abnormal clinical findings of record or the other substantial, credible evidence of record. I note Dr. Loring gave no specific scores for any of the tests he allegedly administered to the claimant. I have relied more heavily on the treating records and the opinion of the state agency medical consultants, which I find to be consistent with the progress reports of the mental health center where he is treated, the report of his primary care provider that his mental limitations are slight, the reports of the Department of Vocational Rehabilitation that he was interested in learning Spanish and computer programming, and the claimant's description of his level of activity and social functioning including playing tennis (which he denied at the hearing) and teaching Bible school.

Administrative Record 22. As more fully discussed below, in considering medical opinions, an ALJ should look at, among other things, "the treatment relationship between the physician and the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). But, as noted below, Plaintiff and Dr. Loring had no treatment relationship. Dr. Loring merely evaluated Plaintiff one time. Second, the Court is of the opinion that Plaintiff may be misreading the decision. As the context of the sentence–"I do not find his opinion, based upon his one-time evaluation of the claimant, to be adequately supported by the minimal abnormal clinical findings of record or the other substantial, credible evidence of record[ ]"–appears to demonstrate, the phrase, "based upon his one-time evaluation of the claimant," seems to be merely descriptive, and not pejorative. For these reasons, the Court will overrule this objection.

Ninth, Plaintiff states that the Magistrate Judge failed to address Plaintiff's argument that "the ALJ's general statement of inconsistency is insufficient to discount Dr. Loring's opinions." Objections 6. In evaluating medical opinions, an ALJ should examine "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654.

In regards to the *Johnson* factors listed above: (1) Dr. Loring examined Plaintiff; (2) there was no treatment relationship between Dr. Loring and Plaintiff; (3) the ALJ correctly found that Dr. Loring's opinion was unsupported by the record; (4) the ALJ properly found that Dr. Loring's opinion was inconsistent with the record; and (5) Dr. Loring is a specialist.

As noted above, in his decision, the ALJ laid out Plaintiff's medical records and the medical opinions related to those records in great detail. The Magistrate Judge did the same in the Report.

7

And, the most cursory review of those records spells out that Dr. Loring's opinion stood alone. It was both inconsistent with, and unsupported by, the rest of the record.

Although the ALJ could have spelled out the inconsistences in more detail than he did, the inconsistencies are easily recognizable, even when giving the decision nothing more than a cursory reading. Were the ALJ to write more, it would not change the fact that there is substantial evidence in the record as a whole to support the ALJ's decision. As such, the Court will overrule this objection.

Tenth, Plaintiff contends that the Magistrate Judge erred in allegedly finding harmless error when he stated that "the record makes clear that the ALJ's decision to give limited weight to Dr. Loring's opinion was not based solely on[,]" Objections 6 (quoting Report 33), Plaintiff's argument "that Dr. Loring was not required to provide raw data of the objective test results he administered[.]" *Id*. The Court finds no error.

Although Plaintiff argues that the ALJ would not have been competent to interpret the scores for the tests that Dr. Loring administered to Plaintiff, that is merely an argument by counsel. Plaintiff offers nothing to the Court to support the claim. And, even if the ALJ were unable to interpret the scores, he could have certainly appointed someone else who could interpret the scores on his behalf. Therefore, the Court will overrule this objections.

Eleventh, Plaintiff complains that the Magistrate Judge erred in allowing "[t]he ALJ's interpretation of the mental health center process notes [to] support the ALJ's rejection of Dr. Loring's opinions." Objections 7. The Court is unconvinced by this argument.

Plaintiff states that "we have a definite statement from the generator of [the mental health] records, Dr. Ratzlaff, that they were not sufficient for him to form an opinion one way or the other

8

on disability." Objections 7 (citing Administrative Record 278). But, the Court is unable to find such a statement on page 278 of the Administrative Record. Moreover, even if Dr. Ratzlaff did say such a thing, the implementing regulations of the Social Security Act make clear that Defendant is ultimately "responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1) (1998). Accordingly, the Court will overrule this objection.

Twelfth, according to Plaintiff, "Dr. Bradberry's opinion is irrefutably irrelevant, and it [was] irrational for the ALJ to have used it." Objections 7. Plaintiff states that the Magistrate Judge erred in overlooking this alleged error. *Id*.

Dr. Bradberry's opinion was made on September 23, 2010. In his opinion, he states, among other things, that Plaintiff's mental impairments cause "slight" work-related limitations. Administrative Record 312. Plaintiff objects to the ALJ's use of Dr. Bradberry's opinion in making his disability determination on the basis that it is irrelevant in that Plaintiff's condition did not worsen until early 2011. This is of no moment. Suffice it to say that the Court finds no reversible error in the ALJ's use of this document. Even so, there is substantial evidence to support the ALJ's decision without it. Accordingly, this objection will be overruled.

Thirteenth, Plaintiff disputes the Magistrate Judge's finding that the ALJ did not err in finding that "[Plaintiff's daily activities are . . . inconsistent with Dr. Loring's opinions" Objections 8. Plaintiff again argues that, even if improper, the Magistrate Judge purportedly found harmless error.

As set forth in the ALJ's decision, according to Plaintiff,

> he could do indoor and outdoor chores, prepare simple meals, take care of his personal hygiene, cut grass, and shop. . . . . He reported that on Sundays and Wednesdays, he interacted with people at church.
>
> \*\*\*\*\*
>
> He reported that he can heat food in the microwave oven and do a little dishwashing . . . . He reported during the summer, he spends fifteen minutes cutting grass and that it takes him three days to complete the mowing. . . . [H]e helped his friend with a deer stand, he reported that he went with his friend, and that the friend picked up the deer stand.
>
> \*\*\*\*\*
>
> [H]e reported that he . . . prepared sandwiches and microwaved meals, did the chores when he felt like it . . . and shopped for food. . . . He reported that he occasionally fished and hunted.
>
> \*\*\*\*\*
>
> He reported at the time he applied for benefits that he did household chores, did laundry, and mowed grass with a riding lawn mower. He also reported at the time that he applied for benefits that he read off and on during the day, [and] went grocery shopping.

Administrative Record 18 (citations omitted). "[H]e [also] reads his Sunday School lessons and occasionally teaches them." *Id*. at 19. Plaintiff has also indicated that he "was interested in learning Spanish and computer programming[.]" *Id*. at 22.

The ALJ is allowed to consider Plaintiff's wide range of activities in determining whether he is disabled. *See Mink v. Apfel*, 215 F.3d 1320 (4th Cir. 2000) (noting with approval that "[t]he ALJ concluded that because [the plaintiff] retained the ability to participate in a wide range of daily activities, she was not disabled by her various impairments.") (unpublished). Plaintiff's ability to conduct all of these activities and his claim to be disabled cannot exist in the same universe. Consequently, the Court will overrule this objection.

Finally, the Court has considered Plaintiff's remaining objections and finds them to be without merit. As a result, the Court will overrule those objections, as well.

It is Plaintiff's duty to both produce evidence and prove that she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). And, it is the duty of the ALJ, not this Court, to make findings of fact and to resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Under the substantial evidence standard . . . ,we must view the entire record as a whole. Additionally, the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

In sum, the Court holds that there is substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled under the Act during the relevant time period. And, the determination is reasonable. To the extent that the ALJ could have done a better job in explaining the bases for finding that Plaintiff is not disabled under the Act, because the ALJ's decision is overwhelmingly supported by the record, to remand the case to Defendant on this issue would be a waste of time and resources. *See Bishop v. Comm'r of Soc. Sec.*, 583 Fed. App'x 65, 67 (4th Cir. 2014) ("[I]f the [ALJ''s] decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.") (citation and internal quotation marks omitted)). Therefore, the Court will affirm Defendant's final decision to deny DIB and SSI to Plaintiff.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report to the extent that it does not contradict this Order, and incorporates it herein. Therefore, it is the judgment of the Court that Defendant's final decision denying Plaintiff's claims for DIB and SSI is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 24th day of March, 2015, in Spartanburg, South Carolina.

s/ Mary G. Lewis<br>
MARY G. LEWIS<br>
UNITED STATES DISTRICT JUDGE